## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

|  |  |  |
|---|---|---|
| **ALEJANDRO HERNANDEZ, and** | § | |
| **EDITH SCHNEIDER-HERNANDEZ,** | § | |
| | § | |
| **Plaintiffs,** | § | **EP-21-CV-00096-FM** |
| | § | |
| **v.** | § | |
| | § | |
| **WEST TEXAS ESTATE SALES, LLC,** | § | |
| **and LINDA MAREE WALKER, and** | § | |
| **AARON ANTHONY ENRIQUEZ,** | § | |
| | § | |
| **Defendants.** | § | |

## ORDER DISMISSING PLAINTFFS' CLAIMS FOR LACK OF SUBJECT MATTER JURISDICTION

On February 29, 2024, this Court informed the parties that it has serious concerns regarding subject matter jurisdiction and requested that the parties brief the jurisdictional issues.[1] These issues, chiefly, revolve around concerns that Plaintiffs do not have Article III standing to bring their Title III ADA claim. Briefs have been submitted by both sides.[2] After thorough consideration, the Court finds that the Plaintiffs lack Article III standing for their Title III claim. The Court is dismissing both the federal and state claims without prejudice.

## I.      BACKGROUND

Alejandro Hernandez and Edith Schneider-Hernadez (collectively "Plaintiffs") brought a Title III ADA claim and a state tort assault and battery claim against the West Texas Estate Sales, LLC, Linda Maree Walker, and Aaron Anthony Enriquez (collectively "Defendants"). These

---

[1] "Order for Briefing from the Parties," ECF No. 87, entered Feb. 29, 2024.

[2] *See* Pls.' Brief, ECF No. 90; Defs.' Brief, ECF No. 93.

claims stem from an alleged incident which occurred on April 24, 2021.[3] Defendants run an estate sales business in El Paso County.[4] Plaintiffs attended several estate sales at Defendants' business prior to April 24, 2021.[5] During the COVID pandemic, Texas had a mask mandate in place for businesses. Plaintiffs allege that they had obtained a medical exemption which allowed them to forgo wearing masks during this time.[6]

On April 24, 2021, Plaintiffs attended an estate sale at Defendants' business without wearing face masks. Linda Maree Walker ("Walker") came over and told Plaintiffs they "need a face mask."[7] Plaintiffs tried to remind Walker about the medical exemptions, but Walker shook her head no.[8] After some back and forth, Plaintiff Schneider-Hernandez said, "oh my God let's leave," and the Plaintiffs started walking towards the door.[9] Defendant Walker allegedly "thrust herself" towards the entrance which pushed Plaintiff Hernandez into Schneider-Hernandez and then yelled while reaching for a sign, "see here, I can discriminate [sic] who I want my sign says I can refuse service to anyone for any reason, now get out."[10] Plaintiff Hernandez then stated, "no you cannot, there are protections against this," while Walker was saying, "sue me," and Defendant

---

[3] "Plaintiffs' First Amended Complaint" ("Complaint") 9, ECF No. 62, filed Oct. 16, 2023.

[4] *Id*. at 3.

[5] *Id*.

[6] *Id*. at 9.

[7] *Id*.

[8] *Id*. at 9–10.

[9] *Id*.

[10] *Id*.

Enriquez was yelling from another room, "this is a private business we can do whatever we want!"[11] This suit swiftly followed.

Plaintiffs' ADA claim is based upon the argument that they both have alleged disabilities within the ambit of the ADA and that the Defendants failed to provide "reasonable accommodations" by allowing Plaintiffs to not wear face coverings.[12] Thus, to be ADA compliant, Defendants must not enforce a mask mandate against the Plaintiffs.

## II.    LEGAL STANDARD

A federal court may raise the issue of standing *sua sponte* at any time during the life cycle of a case.[13] Specifically, in accordance with the Federal Rules of Civil Procedure, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."[14] The determination of the standard of review for a *sua sponte* subject matter inquiry is dependent upon the stage of the litigation.[15] "Thus, at the pleading stage, the plaintiff must allege sufficient facts that, taken as true, demonstrate[e] each element of Article III standing."[16] Alternatively, at the summary judgment stage, a plaintiff can no longer rest on "mere allegations" but must set forth admissible evidence establishing standing.[17] In this case, the parties are currently in the pleading stage.

---

[11] *Id*. at 10–11.

[12] *Id*. at 14–15.

[13] *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) (holding that questions concerning subject matter jurisdiction "must be policed by the courts on their own initiative even at the highest level").

[14] Fed. R. Civ. P. 12(h)(3).

[15] *See Jones v. L.A. Central Plaza LLC*, 74 F.4th 1053, 1057–58 (9th Cir. 2023).

[16] *Id*. (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)) (internal quotation marks omitted).

[17] *Id*. (citing *Gerlinger v. Amazon.com Inc.*, 526 F.3d 1253, 1256 (9th Cir. 2008)).

III.    **DISCUSSION**

Based upon the Plaintiffs' complaint and general factual allegations, they have failed to establish Article III standing as to their Title III claim. Additionally, after careful consideration of the supplemental jurisdiction factors, the Court declines to retain jurisdiction of the state claim.

A.      *Article III Standing and Title III of the ADA*

To establish Article III standing, plaintiffs must show, (1) they have suffered an injury in fact—an invasion of a legally protected interest which is both concrete and particularized, (2) which is fairly traceable to the challenged action of the defendant, and (3) likely to be redressed by a favorable decision.[18] If the party seeking federal redress fails to establish these elements, then an Article III court is without jurisdiction to hear the matter.[19]

Under Title III of the ADA a plaintiff is limited to "injunctive relief, and a restraining or other similar order."[20] Thus, "standing for injunctive relief requires a threat of present or future harm to the plaintiff."[21] Establishing the threat of present or future harm requires a real and immediate—as opposed to merely conjectural or hypothetical—threat of future injury.[22] Past ADA

---

[18] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

[19] *See id*.

[20] *Plumley v. Landmark Chevrolet, Inc.*, 122 F.3d 308, 312 (5th Cir. 1997) (citing 42 U.S.C. § 12188).

[21] *Deutsch v. Travis Cnty. Shoe Hosp., Inc.*, 721 F.App'x 336, 340 (5th Cir. 2018) (internal citation and quotation marks omitted).

[22] *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1334 (11th Cir. 2013) (internal citation and quotation marks omitted).

violations at a place of public accommodation is not itself sufficient for standing, though it provides some evidence supporting the likelihood of future harm.[23]

Challenges to standing in Title III cases typically involve determining whether the ADA plaintiff has sufficiently alleged a "concrete plan" to return to the non-compliant establishment. It is well established that "[m]ere 'some day' intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the 'actual or imminent' injury."[24] This question is prevalent because in the majority of Title III ADA cases the barriers are not easily remedied; therefore, it is not speculative to allege that the barriers will be present in the future. "[T]he risk of injury in fact is not speculative so long as the alleged discriminatory barriers remain in place, the plaintiff remains disabled, and the plaintiff is 'able and ready' to visit the facility once it is made compliant. If the disabled plaintiff returns to the location, the same discrimination will occur until the facility is made complaint."[25] Put simply, a plaintiff establishes a sufficient future injury when she is either currently deterred from visiting a place of public accommodation because of a barrier, or she was previously deterred and is both likely to return and reencounter the barrier.[26]

Thus, two standing issues in these ADA cases may arise: (1) whether a plaintiff has sufficiently alleged a plan to return,[27] and (2) whether a plaintiff has established that the barrier,

---

[23] *Langer v Kiser*, 57 F.4th 1085, 1092 (9th Cir. 2023).

[24] *Deutsch*, 721 F.App'x at 340 (citing *Lujan*, 504 U.S. at 564).

[25] *Betancourt v. Federated Dep't Stores,* 732 F. Supp.2d 693, 709 (W.D. Tex. 2010); *see also Colorado Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1211–12 (10th Cir. 2014) (holding that a disabled plaintiff met Article III standing when the barriers remained present—the store corrected some of the barriers but not its stepped, porch-like structure—and she presented a concrete plan to return).

[26] *See Langer*, 57 F.4th at 1094.

[27] *See Deutsch*, 721 F.App'x at 341.

which initially deterred access, is either currently or would be present in the future given her alleged intent to return. Given that the Plaintiffs have alleged a sufficient plan to return to the business, the question before the Court is whether the barrier will be present in the future.

For Plaintiffs, the alleged barrier was the face mask requirement; therefore, Plaintiffs ask this Court to free them from a mask requirement at Defendants' business. This type of barrier is categorically different from those in many Title III ADA cases.

ADA cases typically involve plaintiffs with physical disabilities who have encountered structural barriers that are not easily or quickly remedied. For example, a paraplegic who alleged there were no ADA-compliant van accessible parking spaces.[28] Or mobility impaired plaintiffs who sought that a city's sidewalks be made ADA-compliant.[29] Likewise, many plaintiffs have encountered some type of "architectural barrier" which impeded their access or mobility in a store or parking lot.[30] The barriers present in these cases raise various architectural, logistical, or financial difficulties and therefore, are not easily remedied. Needless to say, a non-ADA compliant store cannot snap its fingers and change its porch structures or door sizes, a city cannot quickly change its sidewalks, and even disabled parking spaces cannot just be allocated without their own difficulties. Given this reality, it is not speculative or hypothetical for a typical ADA plaintiff to

---

[28] *Deutsch*, 721 F.App'x. at 338.

[29] *See Frame v. City of Arlington*, 657 F.3d 215, 221 (5th Cir. 2011).

[30] *See Betancourt*, 732 F.Supp.2d at 696–97 (Mobility impaired plaintiff alleged that a Macy's store had "architectural barriers" which impeded her ability to access the store); *see also Langer*, 57 F.4th at 1090–91 (Paraplegic plaintiff alleged a lack of van-accessible parking spaces); *see also Houston*, 733 F.3d at 1325–26 (Paralyzed plaintiff alleged a lack of designated disabled use parking spaces, no clear path of travel connecting all essential elements of the supermarket, and restrooms that failed to comply with ADA regulations); *see also Colorado Cross Disability Coal.*, 765 F.3d at 1208–09 (Plaintiff, who used a wheelchair for mobility, encountered a stepped "porch-like structure" at multiple Hollister stores' entrances, a table and furniture layout that impeded access inside the stores, and other barriers).

allege that the offending barriers will remain in place for future injury. However, given what the Plaintiffs have alleged, the facts in this case do not allow such a conclusion.

On April 17, 2020, Governor Abott announced Phase 1 of his plan to reopen Texas during the COVID-19 pandemic.[31] Then, on July 2, 2020, Governor Abbott issued an executive order requiring facemasks in most public settings.[32] Less than a year later, in March 2021, Governor Abbott lifted the statewide executive order that limited occupancy for businesses and required face masks.[33] In May of 2021, after the alleged harm in this case, Governor Abbott issued another executive order which prohibited cities, counties, school districts, public health authorities, and other government entities from requiring people to wear face coverings.[34]

Plaintiffs alleged that they had gone to several estate sales run by the Defendants without needing to wear face masks or encountering the issues that arose on April 24, 2021. Face coverings were mandated beginning on July 2, 2020, then they became optional starting in March 2021, and, as of May 2021, government actors were prohibited from requiring them. The alleged discrimination that Plaintiffs encountered lines up with that timeline and appears to be a product of pandemic period policy. Afterall, the incident that gave rise to this case occurred only a month after Governor Abbott's repeal of a statewide mask mandate (when businesses did not have a choice). While private businesses may still make an independent determination on whether to

---

[31] Bret Jaspers, Marisa Charpentier, and Rachel Osier Lindley, *How We Got Here: A Timeline of Gov. Greg Abbott's COVID Policies*, The Texas Newsroom (Aug. 20, 2021, 8:05 AM), https://www.houstonpublicmedia.org/articles/news/politics/2021/08/20/406474/how-we-got-here-a-timeline-of-gov-greg-abbotts-covid-policies/.

[32] *Id.*

[33] *Id.*

[34] *Id.*

require face masks today, Plaintiffs offer no facts that they will encounter a face mask requirement at Defendants' business either presently or in the future.

Plaintiffs state in their complaint that they "have reasonable grounds to believe that they will continue to be subjected to discrimination in violation of the ADA by the Defendants."[35] What reasonable grounds? This amounts to nothing more than a conclusory statement ticking the elements checkbox for their claim. As established by the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice . . . [a court is] not bound to accept as true a legal conclusion couched as a factual allegation."[36] Unlike the cases highlighted previously, where the alleged harm arose from structural/architectural barriers that were hard to quickly remedy, Plaintiffs cannot rest on speculative or hypothetical conjecture that a mask requirement is still in place. They must allege plausible statements of fact which establish a real and immediate threat for future harm.

The Third Circuit has ruled on a substantially similar case in *Abadi v. Target Corporation*; in *Abadi*, a plaintiff brought several claims, including a Title III ADA claim, alleging that in January 2021, while shopping at a Target, he was asked to put on a face mask, but he refused to do so citing a disorder.[37] The Third Circuit affirmed the district court's dismissal of Abadi's ADA claim for lack of standing because Abadi's allegations pertained to a "one-time incident" and that

---

[35] Complaint at 12.

[36] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[37] No. 23-1050, 2023 WL 4045373 at *1 (3d Cir. June 16, 2023) (per curiam), cert. denied, 144 S. Ct. 235, 217 L. Ed. 2d 93 (2023).

Target's in-store mask policy had been lifted.[38] The court dismissed Abadi's argument, that a mask requirement could be reinstated, as "too speculative to establish Article III standing."[39]

This Court finds the Third Circuit persuasive. The Plaintiffs' altercation at the Defendants' business was a "one-time incident." Texas no longer has a mask mandate, and the Plaintiffs have alleged zero facts which support an inference that Defendants' business still requires masks. Therefore, the Plaintiffs' allegation of future harm is merely speculative, and they do not establish Article III standing as to their ADA claim. Thus, the Court dismisses Plaintiffs' ADA claim for lack of subject matter jurisdiction.

B.     *Supplemental Jurisdiction of the State Claim*

Since the Plaintiffs have not established standing for their ADA claim, the next question is whether the Court should retain jurisdiction over the state claim.

Federal Supplemental Jurisdiction is governed by 28 U.S.C. § 1367. Specifically, 1367(c) lays out that district courts may decline to exercise supplemental jurisdiction over a claim if:

1.  The claim raises a novel or complex issue of State law,

2.  The claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

3.  The district court has dismissed all claims over which it has original jurisdiction, or

4.  In exceptional circumstances, there are other compelling reasons for declining jurisdiction.[40]

The current situation falls under category three now that the Court has dismissed all federal claims of which it had original jurisdiction. Under *United Mine Workers of America v.*

---

[38] *Id*. at *2.

[39] *Id*.

[40] 28 U.S.C. § 1367(c).

*Gibbs*, a federal court should consider and weigh the values of judicial economy, convenience, fairness, and comity when exercising its discretion on whether to maintain jurisdiction over a pendent state law claim.[41] These interests are to be considered on a case-by-case basis, and no single factor is dispositive.[42]

      The general practice in the Fifth Circuit is that a court should dismiss without prejudice any state law claims after it has properly dismissed all of the questions that gave it original jurisdiction so long as the case is still in its early life cycle.[43] However, "this rule is neither mandatory nor absolute; no single factor is dispositive."[44]

      The Fifth Circuit has made clear that a district court abuses its discretion when it declines to exercise jurisdiction over remaining state law claims when a significant amount of judicial resources have been invested into the litigation.[45] A review of Fifth Circuit precedent on the issue helps illuminate what a "significant amount of judicial resources" entails.

      In *Batiste v. Island Records Inc.*, the Fifth Circuit held that a district court abused its discretion in declining to exercise supplemental jurisdiction over remaining state law claims when the remaining claims did not involve difficult state law issues, the district court was intimately familiar with the claims given that the case had been pending for almost three years, and the case had produced sixteen volumes of record including multiple depositions, discovery

---

[41] *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).

[42] *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 587 (5th Cir.1992).

[43] *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 395 (5th Cir. 1992); *see also Parker & Parsley Petroleum Co.*, 972 F.2d at 585.

[44] *Brookshire Bros. Holding v. Dayco Prod., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009).

[45] *Id.* (citing *Batiste v. Island Records Inc.*, 179 F.3d 217, 227 (5th Cir. 1999).

disputes, and multiple motions to dismiss and summary judgment.[46] In *Newport Ltd. v. Sears, Roebuck and Co.*, the court held that the district court abused its discretion when it declined to exercise supplemental jurisdiction over routine questions of state law where the case had been pending for four years, resulted in 23 volumes and thousands of pages of record, over a hundred depositions had been taken which resulted in nearly two hundred thousand pages of discovery, and the court had issued and prepared a pretrial order exceeding 200 pages.[47] Likewise, in *Mendoza v. Murphy*, the court ruled that the district court did not abuse its discretion in retaining jurisdiction over the remaining state law claims because the state claims were not complex, the discovery deadline had passed and the parties had engaged in full discovery, and the parties had fully briefed Defendants' motion for summary judgment.[48]

Compare and contrast those cases with *Parker & Parsley Petroleum Co. v. Dresser Indus.*, where the Fifth Circuit held that the district court abused its discretion when it retained jurisdiction over remaining state law claims when the proceedings were at a relatively early stage, discovery had not been completed, and it would not present any significant burdens on the parties to litigate in state court such as repeating arguments or restarting the discovery process.[49] In *Enochs v. Lampasas County*, the court ruled that the district court abused its discretion in retaining jurisdiction over the remaining state law claims where the state law claims were novel and complex, very little had been done so there was no concern the parties would have to

---

[46] *Batiste*, 179 F.3d at 227–28.

[47] 941 F.2d 302, 308 (5th Cir. 1991).

[48] 532 F.3d 342, 346–47 (5th Cir. 2008).

[49] *Parker & Parsley Petroleum Co.*, 972 F.2d at 587–90.

duplicate research, discovery, briefings, or hearings, and the district court's denial of a motion to dismiss did not require thorough consideration of the state law claims' merits.[50]

      While, in the instant matter, some factors weigh in favor of retention—such as the fact that the state law claim is not novel or complex and the case has been pending for three years—there are distinctive differences between this case and those in which it was or would have been an abuse of discretion to decline retention which tip the balance towards dismissal. The first is that this case has never made it pass the pleading stage. Following the Plaintiffs filling of suit, the Defendants simultaneously filed their answer and a 12(b)(6) motion to dismiss.[51] The Defendants' motion to dismiss only addressed Plaintiffs' ADA claim.[52] On August 19, 2021, the Court partially granted Defendants' motion to dismiss as to the ADA claim and ordered for supplemental briefing with respect to the remaining state claim.[53] The Court would later dismiss the state law claim because it declined to exercise supplemental jurisdiction over it.[54] The Plaintiffs then filed a notice of appeal on January 24, 2022.[55] The Fifth Circuit later ruled that "the district court erred by denying without explanation the Plaintiffs' request for an opportunity to amend their complaint," and remanded the case back to this Court.[56] Back from remand, the

---

[50] 641 F.3d 155, 159–60 (2011).

[51] *See generally* "Defendants' First Amended Answer, Affirmative Defenses and Motion to Dismiss," ECF No. 12, filed June 25, 2021.

[52] "Order Partially Granting Motion to Dismiss" 5, ECF No. 29, filed Aug. 19, 2021.

[53] *Id*. at 13.

[54] "Order Dismissing Cause Without Prejudice" 2, ECF No. 36, filed Jan. 3, 2022.

[55] "Notice of Appeal," ECF No. 38, filed Jan. 24, 2022.

[56] "Certified copy of USCA Judgment/Mandate Remanding" 10, ECF No. 55, entered Sep. 8, 2023 (On appeal the Fifth Circuit did not overrule the court's determination to decline supplemental jurisdiction over the state law claim).

Court entered a scheduling order in which the parties were to submit an amended complaint and answer. The Plaintiffs filed their amended complaint on October 16, 2023.[57] However, the Defendants did not timely file their answer. They attempted to file it late without requesting leave of the court; therefore, the Court marked the answer and motion to dismiss as deficient. The Defendants have since filed multiple motions for leave to file an amended answer and the Plaintiffs are opposed to these motions for leave.[58] Thus, the Defendants have not yet filed a valid answer since this case was remanded by the Fifth Circuit. Ultimately, this case has never made it pass the pleading/pre-answer motion to dismiss stage.

Therefore, the parties have never engaged in formal discovery, they have never made it to the summary judgment stage, and, of course, have never made it to a trial on the merits. Thus, this case is not like *Batiste* or *Newport Ltd.* in which extensive discovery had been completed which resulted in a multitude of volumes and hundred of pages of record. Just as in *Parker & Parsley Petroleum Co.*, it is not a burden to the parties to conduct discovery in state court because they would not be duplicating any discovery work or accruing additional discovery expense—as they have not done any discovery in the federal case.

The second key difference is that this Court does not have familiarity with the state claim and a substantive motion on the state claim is not ripe. As outlined earlier, in *Mendoza*, the Fifth Circuit noted that the district court had before it a fully briefed motion for summary judgment.[59] Currently, there is no ripe substantive motion before the Court. The only ripe motions are

---

[57] "Plaintiffs' First Amended Complaint," ECF No. 62, filed Oct. 16, 2023.

[58] *See generally* "Defendants' Memorandum in Support of Motion for Leave to file Defendants' Third Amended Answer, Affirmative Defenses and Motion to Dismiss," ECF No. 89, filed Mar. 1, 2024; see also "Plaintiffs' Response in Opposition to Defendants' Motion for Leave to File Defendants' Third Amended Answer, Affirmative Defenses and Motion to Dismiss," ECF No. 94, filed Mar. 19, 2024.

[59] *Mendoza*, 532 F.3d at 346–47.

Defendants' requests for leave to file an amended answer. In addition, when the Court ruled on the motion to dismiss it noted that the Defendants "offer[ed] no argument with respect to Plaintiffs' assault and battery claim."[60] The Court requested supplemental briefing on the state law claim but the parties never provided it before final disposition was entered and a notice of appeal was filed. Therefore, similar to *Enoch*, the Court's prior ruling on the motion to dismiss did not require *any* consideration of the state law claim. As such, this Court has never considered Plaintiffs' state tort claim, nor does it have the required briefing to do so now.

Lastly, the Plaintiffs are not impeded by the statute of limitations of their state claim.

28 U.S.C. § 1367(d) specifically states:

The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.[61]

The Supreme Court has held that this provision "stops-the-clock," meaning that the state statute of limitations period is suspended during the pendency of the federal suit.[62] Therefore, the clock stopped on the state law claim while this case has been in federal court. Thus, Plaintiffs still have recourse available to file their tort claim in state court.

In conclusion, the Court determines that the supplemental jurisdiction factors weigh in favor of dismissal. Accordingly,

1. It is **HEREBY ORDERED** that the Plaintiffs **HAVE NOT** established Article III standing as to their Title III ADA claim.

2. It is **FURTHER ORDERED** that the court is **DECLINING** to exercise supplemental jurisdiction over the state claim.

---

[60] "Order Partially Granting Motion to Dismiss" 5, ECF No. 29, filed Aug. 19, 2021.

[61] 28 U.S.C. § 1367(d).

[62] *See Artis v. D.C.*, 583 U.S. 71, 89–92 (2018).

3.  A **FINAL DISPOSITION** will be issued subsequent to this order.

**SIGNED AND ENTERED** this **7th** day of **May 2024.**

**FRANK MONTALVO**
**SENIOR UNITED STATES DISTRICT JUDGE**